# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

RONALD DUGAS                                    CIVIL ACTION NO. 6:09-0673
     LA. DOC #314846
VS.                                                          SECTION P

                                                 JUDGE DOHERTY

WARDEN BURL CAIN                            MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

*Pro se* petitioner Ronald Dugas filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on April 20, 2009.  Petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections.  He is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Petitioner attacks his 2001 armed robbery and simple robbery convictions entered in the Fifteenth Judicial District Court for Lafayette Parish.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE** as time-barred by the provisions of 28 U.S.C. § 2244(d).

## FACTUAL AND PROCEDURAL BACKGROUND

On July 13, 2001, petitioner was convicted of armed robbery and simple robbery. On December 7, 2001, he was sentenced to consecutive sentences of 50 and 7 years, respectively.  _____

On June 5, 2002,  the Third Circuit affirmed petitioner's convictions and sentences in an unpublished opinion. *State of Louisiana v. Ronald Dugas*, 2002-00202 (La. App. 3 Cir. 6/5/2002), 825 So.2d 600 (Table). [*See also* Slip Opinion, rec. doc . 1-4, pp. 22-38]. However, the court remanded the matter to the trial court for the court to inform petitioner of the two year limitation for filing for post-conviction relief.   On direct appeal to the Third Circuit, petitioner argued the following Assignments of Error: (1) sufficiency of the evidence; (2) denial of petitioner's motion to suppress his photographic line-up; (3) failure to order attachment on petitioner's alibi witness, and counsel's ineffectiveness for failing to object when trial began without the witness being present; (4) ineffective assistance of counsel based on trial counsel's failure to move for a mistrial (docket sheet showing other criminal charges was posted in the hallway); (5) ineffective assistance of counsel based on trial counsel's failure to move for a mistrial when fingerprint evidence not disclosed prior to trial was initially mentioned; and, (6) sentencing error and excessiveness of sentence.

On September 26, 2003, the Louisiana Supreme Court denied writs. *State of Louisiana ex rel. Ronald Dugas v. State of Louisiana*, 2002-KH-2356 (La. 9/26/2003), 854 So.2d 351.  Petitioner has not submitted a copy of his writ application to the Louisiana Supreme Court for this court's review.  Petitioner did not seek further direct review  in the United States Supreme Court.

On or about May 26, 2004[1], petitioner filed a *pro se* application for post-conviction relief in the Fifteenth Judicial District Court.  In this Application, petitioner argued the following claims for relief:  (1) ineffective assistance of counsel (failure to call witnesses; allowing State's witnesses to remain in court after having been sworn in; failure to ask for mistrial upon learning that witnesses discussed case with petitioner's relatives); (2) trial judge made "unfavorable" decisions (failed to attach defense witness who failed to appear at trial); (3) discrepancies in the testimony of State witnesses; (4) one of the jurors knew the petitioner was incarcerated because the juror's boyfriend was incarcerated with petitioner at the time of trial. [rec. doc. 1-4, pp. 53-60].  On July 7, 2004, the trial court denied the Application. [rec. doc. 1-5, p. 2].

Petitioner sought writs in the Third Circuit Court of Appeals, apparently filing two separate writ applications.  [*See* rec. doc. 1-5, p. 17 [2]]. The Third Circuit  denied both of petitioner's requests for review on March 18, 2005 and April 27, 2005, respectively. [*Id.*]. In its first opinion, the Third Circuit denied the writ as premature because petitioner had not shown that he had sought relief in the trial court.  *State  of Louisiana v. Dugas*, KH 05-0248 (La. App. 3rd Cir. 3/18/2005) (unpublished) (attached hereto as Court Exhibit

---

[1] Petitioner signed and dated the certificate of service and affidavit of poverty on May 26, 2004. [rec. doc. 1-4, p. 59]. Louisiana follows the "mailbox rule" in determining when a *pro se* pleading is filed by a prisoner. *State ex rel. Johnson v. Whitley*, 648 So.2d 909 (La.1995) [*adopting Houston v. Lack*,  487 U.S. 266 (1988)]. A Louisiana prisoner's *pro se* pleading is deemed "filed" when he delivers it to prison authorities for forwarding to the court. *Id.* at 909.

[2] Petitioner has not provided copies of these writ applications or the judgments of the Third Circuit Court of Appeals. This fact was obtained from a paragraph in the State's response to petitioner's second application for post-conviction relief.

"A").

The second writ was denied as deficient because the application did not comply with Rule 4-5 of the Uniform Rules of the Courts of Appeal and La. Code Crim.P. art. 912.1.  More specifically, the Third Circuit held that the application was deficient because petitioner's writ application did not contain an affidavit of correctness, a copy of the complained of judgment, a copy of each pleading on which the judgment was founded, and the trial court's reasons for judgment.  *State of Louisiana v. Dugas*, No. KH 05-00463 (La. App. 3rd Cir. 4/27/2005) (unpublished) (attached hereto as Court Exhibit "B"). Petitioner did not seek further review of these writ denials in the Louisiana Supreme Court.

_____Petitioner filed a second Post-Conviction Application on June 3, 2005, asserting that the State had withheld favorable evidence from the defense (the fact that a state's witness had a criminal record and was a drug addict).[3]  [rec. doc. 1-5, pp. 3-9].  On July 15, 2005, after receiving the Application, the District Attorney obtained a criminal history on the State's witness, Kevin Coffey.  According to the information received by the District Attorney, Mr. Coffey was convicted of a felony drug offense and given a suspended sentence on October 25, 2001.  Prior to that date, Coffey had been arrested on other occasions, but convicted only one time previously of a misdemeanor drug charge in

---

[3] Petitioner suggests that this second application for post-conviction relief supplemented his original application for post-conviction relief, and was not a new suit.  In his writ application to the Third Circuit, petitioner states that he "may not have received notice of that denial [the decision on his first post-conviction application] because of changes in his place of incarceration." [rec. doc. 1-5, p. 27].  The record does not support this claim.

4

California.  [*Id*.].

On July 19, 2005, the State responded to the application for post-conviction relief, attaching a copy of Mr. Coffey's rap sheet.  [rec. doc. 1-5, pp. 17-18].  Petitioner's second Post-Conviction Application was allegedly denied by the trial court on February 3, 2006. Petitioner has not provided a copy of the District Court's judgment or reasons for judgment.

Petitioner alleges that he filed a writ application in the Third Circuit Court of Appeals on February 23, 2006, which was docketed under number KH 06-00433.  In this writ application, petitioner argued three claims for relief: (1) "The trial court erred in denying petitioner's supplemental claim, by accepting it as a second post-conviction [application] where petitioner filed his supplemental claim prior to court denying his original post-conviction application [a]lleging that his counsel was ineffective"; (2) "Whether the trial court erred in denying petitioner's allegation, that the state withheld impeachment and exculpatory information concerning State's witness Kevin Coffey['s] criminal history which denied petitioner [the] right to present a defense and a fair trial"; and (3) "Whether the trial court erred in determining counsel ineffectiveness, because petitioner's counsel was retained, when counsel failed to object to the surprise evidence or ask for a mistrial at the introduction of testimony of a finger print."  [rec. doc. 1-5, pp. 22-37].  The Third Circuit denied review on July 19, 2006.  In denying review, the Third Circuit held:

5

Relator has failed to demonstrate that he is entitled to relief.  He has not shown that the trial court's treatment of his claims as two separate applications prejudiced him.  La. Code Crim.P. arts. 930.2 and 930.3.  His claim that the State failed to disclose exculpatory evidence lacks merit.  His claim regarding fingerprint evidence was not first raised in the trial court.  La. Code Crim.P. art. 929(A).

*State of Louisiana v. Dugas*, No. KH 06-00433 (La. App. 3rd Cir. 4/27/2005) (unpublished) (attached hereto as Court Exhibit "C").

Petitioner alleges that on July 28, 2006, he filed an application for writs in the Louisiana Supreme Court.  On May 11, 2007, the Louisiana Supreme Court denied review without comment.  *State of Louisiana ex rel. Ronald Dugas  v. State of Louisiana*, 2006-2180 (La. 5/11/2007), 955 So.2d 1276.  Petitioner has not provided a copy of his writ application to this court.

_____On July 17, 2007, petitioner alleges that he was placed in administrative segregation, and his personal property, and legal documents, including a copy of the District Attorney's file that petitioner had previously obtained through a public records request, were placed in a storage room.  On July 24, 2007, when petitioner was brought to the storage room to retrieve these items, he discovered that they were missing.  Accordingly, on July 31, 2007, petitioner filed a loss of property claim with prison officials. [rec. docs. 1-3, pg. 2-3; 4, pg. 3; 1-5, p. 40].  Petitioner then began administrative and judicial proceedings, which resulted in a cash settlement of $372.50, the amount petitioner paid for copies of the District Attorney's file, tendered to petitioner on December 30, 2008.  [*Id.;* rec. doc. 1-5, pg. 56-57, 41, and 40-63, *in globo*].  Petitioner never obtained a duplicate copy of the District Attorney's file or his legal papers,

however, because the settlement funds were seized by the Louisiana State Penitentiary as payment for petitioner's outstanding debts to the Institution. [rec. doc. 9, pg. 3].

In the instant federal *habeas corpus* petition, petitioner asserts the six claims raised on direct appeal and the claim raised in petitioner's second Application for Post-Conviction relief: (1) "Was there sufficient evidence presented to convict defendant of armed robbery and simple robbery?"; (2) "Did the trial court err in failing to suppress the photographic line up?";  (3) "Did the trial court err in failing to order an attachment upon an alibi witness properly subpoenaed by the defense?"; (4) "Was trial counsel ineffective for not asking for a mistrial when it was discovered [that] the docket posted outside the court room in full view of the jury, disclosed the other four counts charged but not pursued against the Defendant?"; (5) "Was trial counsel ineffective for not asking for a mistrial when the prosecutor . . . failed to disclose fingerprint evidence discovered during the course of the trial resulting in an inadvertent admission of inadmissible evidence during counsel's cross-examination of a police officer?"; (6) "Did the trial court adequately comply with the sentencing mandates of La. C.Cr.P. art. 894.1, and are the consecutive imposed sentences excessive?"; and  (7) "Whether the trial court erred in denying petitioner's allegation that the State withheld impeachment and exculpatory information concerning State's witness Kevin Coffey's criminal history which denied petitioner a fair trial."

Petitioner signed his federal *habeas corpus* petition setting forth his claims for relief on March 4, 2009.  [rec. doc. 1-3, p. 15].  However, instead of tendering the pleadings to prison authorities for mailing to this Court, petitioner sent his petition to his mother in Lafayette, who, on April 20, 2009, mailed the petition, memorandum and exhibits to this Court for filing.  [rec. doc. 1, pp. 24-25].  The pleadings were received and filed on April 21, 2009.  Under these circumstances, and in the absence of any evidence to the contrary, April 21, 2009 will be considered the date that the petition was filed. Thereafter, on September 8, 2009, petitioner filed a detailed Memorandum in Support of federal *habeas corpus* relief. [rec. doc. 4].

In his original petition, and his subsequent detailed Memorandum in Support of federal *habeas corpus* relief, petitioner concedes that his federal petition is untimely. However, he argues that the loss of his legal file by prison officials constitutes a State created impediment, entitling him to statutory or equitable tolling of the federal one-year limitation period. More specifically, petitioner conclusorily asserts that the loss of his legal papers made it "virtually impossible" for petitioner to file his federal petition timely. [rec. docs. 1-3, pg. 2 and 4; 4, pg, 5].  Under the circumstances, petitioner was given an opportunity to present any additional arguments regarding the timeliness of this petition to this court before a timeliness determination was made. [rec. doc. 8].

In response, petitioner asserts that while he was in administrative segregation, petitioner asked Norman Billiot, "inmate counsel substitute" at the Louisiana State

Penentiary who assisted petitioner in litigating his lost property claim in the Louisiana state courts, to help him with his criminal case.  Billiot advised petitioner that because Dugas did not have his legal papers, he, Billiot, could not prepare Dugas' federal *habeas corpus* petition.  He further advised that once the legal papers were received, he could file the federal petition and that it would be considered by this federal court because the Institution had lost his legal files.  In support, Dugas submits the Affidavit of  Billiot in which he asserts  "Since Mr. Dugas did not have any legal documents in his possession, it would be impossible for me to prepare his claims for federal *habeas* review. In any event, I advised him that the prison officials created the impediment which prevented him from filing a timely § 2254 petition. I told him that the federal court would recognize the 'state created impediment' and toll the time limitation for filing his § 2254 petition." [rec. doc. 9, Exhibit A, pg. 8].  Based on this advice, Dugas alleges that he did not file his federal petition timely.

Thereafter, in late February, 2009, petitioner contacted another "inmate counsel substitute", Vernon Orange, who had previously assisted petitioner with his criminal case. Petitioner told Orange that his legal papers had been lost by the Institution, that Billiot had advised that he could not file a federal petition without them, and that Billiot further advised that the federal court would consider his case once the papers were obtained and the petition was filed.  Orange, however, informed petitioner that "Mr. Billiot was wrong." [rec. doc. 9, pg. 4].  Moreover, Dugas discovered that Orange "still had some of

Dugas' legal papers", which he, Orange, used to prepare the instant petition on petitioner's behalf.  [rec. doc. 9, pg. 4).  Those papers are apparently those which were attached as exhibits to the instant petition: Petitioner's brief filed in the Louisiana Third Circuit Court of Appeal on direct appeal, the State's appellate brief, the Louisiana Third Circuit Court of Appeal's June 5, 2002 decision on direct appeal, petitioner's first Application for Post-Conviction Relief, the State's Response thereto, the trial court's July 7, 2004 Ruling denying Petitioner's first Application for Post-Conviction Relief, petitioner's second Application for Post-Conviction Relief, the State's Response thereto (including Kevin Coffey's rap sheet), petitioner's Rebuttal to the State's Response, petitioner's writ application filed in the Louisiana Third Circuit Court of Appeal and the Louisiana Supreme Court's May 11, 2007 writ denial.

## LAW AND ANALYSIS

### *Calculation of the  Federal One-Year Limitation Period*

Title 28 U.S.C. § 2244(d)(1)(A) provides a one-year statute of limitations for the filing of federal petitions seeking *habeas corpus* relief by persons, such as petitioner, who are  in custody pursuant to the judgment of a State court.  This limitation period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . . "  28 U.S.C. § 2244(d)(1)(A).

10

The statutory tolling provision of 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period. *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2). However, any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period (*see Villegas v. Johnson,* 184 F.3d 467, 472 (5th Cir. 1999) *citing Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)) and, of course, the limitations period is tolled only for as long as the state application remains "properly filed" and pending in the state's courts. *See Johnson v. Quarterman*, 483 F.3d 278 (5th Cir. 2007). Federal courts may raise the one-year time limitation *sua sponte*. *Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

Petitioner concedes that his petition is time-barred if the limitations period is determined in accordance with 28 U.S.C. § 2244(d)(1)(A). Petitioner's request for discretionary review on direct appeal in the Louisiana Supreme Court was denied on September 26, 2003. *State of Louisiana ex rel. Ronald Dugas  v. State of Louisiana*, 2002-2356  (La. 9/26/2003), 854 So.2d 351. Petitioner did not seek further direct review in the United States Supreme Court. Thus, his conviction became final after the delay for seeking direct review in the United States Supreme Court expired, that is, at the latest, on December 26, 2003, 90 days after the Louisiana Supreme Court denied writs on direct appeal. *See* Supreme Court Rule 13; *Ott v. Johnson,* 192 F.3d 510, 513 (5th Cir. 1999);

11

*Roberts v. Cockrell,* 319 F.3d 690, 693 (5ᵗʰ Cir. 2003).  Dugas therefore had one year, or until December 26, 2004, to file for relief in this court.

Petitioner statutorily tolled the limitation period pursuant to § 2244(d)(2) when he filed his first Application for Post-Conviction Relief on May 26, 2004. However, by the time he filed the application, a period of approximately 5 months of the one-year federal limitation period had elapsed.  That Application remained "pending", for tolling purposes, only until July 7, 2004, when the trial court denied the Application.  The Application for writs o the Third Circuit did not further toll the limitation period because both of the writs petitioner filed in the Louisiana Third Circuit Court of Appeal with respect to that Application were not "properly filed."  *See Allen v. Siebert,* 522 U.S. 3, 5, 128 S.Ct. 2, 169 L.Ed.2d 329 (2009) *citing Artuz v. Bennett,* 531 U.S. 4, 10-11, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) and *Pace v. DiGuglielmo,* 544 U.S. 408, 417, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (noting that post-conviction petitions rejected on the basis of  "filing conditions"  are not " properly filed" under § 2244(d)(2) because they "go to the very initiation of a petition and a court's ability to consider that petition."). The first writ was deemed prematurely filed and the second such writ was deemed deficient because it did not comply with Rule 4-5 of the Uniform Rules of the Courts of Appeal and La. Code Crim P. art. 912.1.  Accordingly, neither pleading statutorily tolled the limitation period.

Petitioner again statutorily tolled the limitation period pursuant to § 2244(d)(2) when he filed his second Application for Post-Conviction Relief on June 3, 2005. However, by the time he filed that Application, a period of approximately 11 more

months had elapsed  Moreover, tolling with respect to petitioner's second Application for

Post-Conviction Relief ceased, and the limitation period began to run anew, on May 11,

2007, when the Louisiana Supreme Court denied petitioner's request for discretionary

review.  The instant petition was not filed until April 21, 2009.  Thus, under §

2244(d)(1)(A), it is clear that the instant  petition is untimely.

Recognizing this obstacle to federal *habeas* review, petitioner argues that the

instant petition is timely under § 2244(d)(1)(B).[4]  Under § 2244(d)(1)(B), the federal one-

year limitation period is tolled until "the date on which the impediment to filing an

application created by State action in violation of the Constitution or laws of the United

States is removed, if the applicant was prevented from filing by such State action."

The Fifth Circuit has articulated three criteria that a prisoner must meet to invoke

statutory tolling under § 2244(d)(1)B): "(1) he was prevented from filing a petition (2) by

State action (3) in violation of the Constitution or federal law."  *Egerton v. Cockrell*, 334

F.3d 433, 436 (5th Cir.2003).  Petitioner argues the existence of two "state-created

impediments" –  first, the loss of his legal files by prison authorities in July, 2007, and

second, the erroneous advice of inmate counsel substitute Billiot.[5]

_____

[4]Petitioner does not argue that subsection (C) or (D) are applicable, nor does the record support any such argument.  Nothing in the record before the court suggests that petitioner is relying on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review.  *See* 28 U.S.C. § 2244(d)(1)(C).  Moreover, to the extent that petitioner could have argued that the factual predicate of his *Brady* claim was only recently discovered, that argument is unavailing, as more than one year elapsed after litigation of petitioner's second Post-Conviction Application, in which this claim was asserted, had concluded.  *See* 28 U.S.C. § 2244(d)(1)(D).

[5] Petitioner argues:
In addition to the State's losing Dugas' legal papers, the State also impeded him in filing a timely

13

Initially, the undersigned finds that in light of the above analysis, petitioner cannot avail himself of the benefit of statutory tolling under § 2244(d)(1)(B).  The alleged "state created impediments" commenced in July, 2007 when petitioner's legal files were allegedly transferred to storage and lost by prison officials and thereafter, when Billiot allegedly provided petitioner with incorrect legal advice.  However, by July, 2007, the one-year limitation period had already lapsed.  A total of more than 18 months had passed during which no "properly filed" state post-conviction proceeding was pending in the Louisiana state courts. In short, the federal one-year statute of limitations expired before petitioner's legal files were lost and Billiot's faulty advice was given.  Accordingly, petitioner's lost legal files and Billiot's faulty advice could not have prevented the timely filing of the instant petition.  *See Rivera v. Schriro*, 2009 WL 1148585 (D. Ariz. 2009) *citing Bryant v. Arizona Atty Gen*., 499 F.3d 1056, 1060 (9th Cir. 2007).

Nevertheless, and in the alternative, each of petitioner's arguments are addressed below.

---

*habeas* petition because the inmate counsel substitute assigned to provide legal assistance to him refused to help him without having access to his legal papers. The inmate counsel informed Dugas that the *habeas* petition could not be filed without his legal papers. He advised Dugas not to file his *habeas* petition until he obtain his legal papers. He informed Dugas that once he obtained the legal papers, he could file his petition and that the federal court would consider his case.

*             *             *

Dugas relied on the assistance of Mr. Billiot. If the Court deems that Dugas should have filed his *habeas* petition without his legal papers, then the assistance, the State, through Mr. Billiot, provided Dugas deprived him of his constitutional right to access." [rec. doc. 9, pp. 4-5].

*Loss of Legal Files*

Petitioner claims that the loss of his legal files by the Louisiana State Penitentiary, when petitioner was transferred to administrative segregation and his files were placed in storage, was a State created impediment to the timely filing of the instant federal petition. This claim is clearly without merit because petitioner has not met the first *Egerton* criteria, that is, that the loss of his legal files by prison officials prevented petitioner from filing a timely federal petition.  Contrary to petitioner's claim, the record demonstrates that the Institution's alleged loss of petitioner's legal files did not ultimately prevent petitioner from filing his federal  *habeas* petition.  Petitioner acknowledges that he never obtained a duplicate copy of his lost legal files because the settlement funds from his Louisiana state court lawsuit, in the amount necessary to obtain duplicate copies, were seized to satisfy petitioner's outstanding debts at the Louisiana State Penitentiary.  [rec. doc. 9, p. 3].

Moreover, by Dugas' own admission, although unbeknownst to him until late February, 2009, inmate counsel Orange "still had some of Dugas' legal papers . . ." from assistance he previously rendered to petitioner in connection with petitioner's criminal case, and "Mr. Orange used them to prepare Dugas' *habeas* petition." [rec. doc. 9, p. 4]. Thus, the legal documents allegedly lost by the Institution, were not necessary for the preparation or timely filing of the instant petition as petitioner was able to file his federal petition without ever obtaining a duplicate copy of the legal documents which were

15

allegedly lost by the Institution. The alleged state created impediment therefore did not prevent petitioner from timely filing a federal *habeas corpus* petition.[6] *See Hatcher v. Quarteman,* 305 Fed. Appx. 195, 196 (5th Cir. 2008) (unpublished) (noting in the context of equitable tolling, "Hatcher has not shown that not having possession of his trial counsel's file prevented him from filing his application, as opposed to proving his claims . . . . Hatcher was able to file his state habeas application without first obtaining a copy of his trial counsel's file, and he ultimately, if belatedly, also filed his § 2254 application without first obtaining a copy. He has not shown that lack of possession of the file prevented him from filing his application on time."); *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002) (§ 2244(d)(1)(b) inapplicable because the petitioner was able to file his federal petition without first obtaining his trial transcript which was allegedly improperly withheld by the State); *Campbell v. Milyard*, 2009 WL 1916273, *4 (D. Colo 2009).

Petitioner could have filed a timely bare bones federal petition in July, 2007, exactly as he did in April, 2009, without having copies of the lost legal documents, which,

---

[6]Courts have recognized that the petitioner must demonstrate a causal connection between the alleged impediment and the inability to timely file a federal petition. This petitioner has not done. *See Rivera v. Schriro*, 2009 WL 1148585 (D. Ariz. 2009) *citing Bryant v. Arizons Atty Gen*., 499 F.3d 1056, 1060 (9th Cir. 2007); *Ramos v. Walker*, 2002 WL 31251672, *2 (S.D.N.Y. 2002); *See also Brooks v. Goodwin*, 2009 WL 3157037 (W.D. La. 2009) *citing Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002) (noting that the "plain language [of the statute] makes clear that whatever constitutes an impediment must prevent a prisoner from filing his petition."); *Wood v. Spencer*, 487 F.3d 1, 7-8 (1st Cir. 2007) (noting that the State's alleged "conduct cannot fairly be said to have been the obstacle to prevent Wood from filing for federal *habeas* relief" given that "with the exercise of garden variety diligence, [he] could have learned the content of the [alleged *Brady* evidence] and, thus, obliterated the adverse effects of the Commonwealth's nondisclosure. . . . ").

to date, have never been replaced.[7]  In sum, because the loss of petitioner's legal files by

the Louisiana State Penitentiary in July, 2007 did not prevent  the filing of the instant

petition in April, 2009, that same event could not have prevented the filing of the petition

at an earlier, timely date.  Petitioner is therefore not entitled to the benefit of having the

one-year limitation period calculated under § 2244(d)(1)(B).

### Erroneous Advice of Inmate Counsel Billiot

Petitioner's claim that  his reliance on the erroneous advice of inmate counsel

substitute Billiot constitutes a "state created impediment" for the purpose of statutory

tolling under 28 U.S.C. § 2244(d)(1)(B) is equally meritless.  Petitioner has not satisfied

the third *Egerton* criteria; he has not demonstrated that the State's action which allegedly

prevented the timely filing of this petition violated the Constitution.

To the extent that petitioner's allegations may be construed as a claim that Billiot

provided him ineffective assistance of counsel, that claim is without merit.  It is well

settled that prisoners do not have a constitutional right to counsel when mounting

---

[7]Indeed, all of the files needed to file a timely federal *habeas corpus* petition were in the possession of Orange, petitioner's inmate counsel who had previously assisted petitioner with his criminal case, the entire time. In the instant petition, Dugas asserts the six claims he raised on direct appeal and the claim he raised in his second Post-Conviction Application. The attachments to the original petition, which were in the possession of inmate counsel Orange, included the following documents as exhibits: Petitioner's brief filed in the Louisiana Third Circuit Court of Appeal on direct appeal, the State's appellate brief, the Louisiana Third Circuit Court of Appeal's June 5, 2002 decision on direct appeal, petitioner's second Application for Post-Conviction Relief, the State's Response thereto (including Kevin Coffey's rap sheet), petitioner's Rebuttal to the State's Response, petitioner's writ application filed in the Louisiana Third Circuit Court of Appeal and the Louisiana Supreme Court's May 11, 2007 writ denial.  These documents clearly set forth the claims which Dugas had presented to the Louisiana state courts, which, considering the exhaustion doctrine, could therefore properly be re-asserted in this federal court.  While additional documents that were lost by prison officials might have assisted petitioner to prove his federal claims, it is clear that these additional documents were not needed for petitioner to prepare and file a timely federal petition setting forth his claims for relief.

collateral attacks upon their convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 555,  107 S.Ct. 1990, 1993,  95 L.Ed.2d 539 (1987) *citing Johnson v. Avery*, 393 U.S. 483, 488, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969); *Coleman,* 501 U.S. at 752. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *Coleman,* 501 U.S. at 752 *citing Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982).

Further, petitioner has not shown a deprivation of his right to access the courts. While "[i]t has long been recognized that prisoners generally enjoy the constitutional right of access to the court. . ." that  right is not unlimited.  *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) *citing Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977),  *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) and *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997).  To the contrary, the right includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id. citing Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).  Stated differently, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993); *Norton v. Dimazana*, 122 F.3d 286, 290 (5th Cir. 1997); *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996); *Lewis v. Casey*, 518 U.S.

at 351, 116 S.Ct. at 2179-81.  Thus, a prisoner is not entitled to the assistance of someone trained in the law, but rather is entitled only to a reasonably adequate opportunity to present his claims to the courts. *See Smith v. Newland*, 48 Fed. Appx. 233, 234 (9th Cir. 2002) *citing Lewis v. Casey*, 518 U.S. 343, 351, 356 and 360, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Here, the Louisiana State Penitentiary provides inmates with  a reasonable opportunity to prepare and file federal claims challenging their Louisiana state court convictions.  The institution has an extensive law library, as well as numerous inmate counsel.  Moreover, the record herein does not support a finding that Billiot's alleged faulty advice denied petitioner a reasonable opportunity to file a federal petition.  To the contrary, petitioner was able to prepare and file a federal petition. It is clear that petitioner was aware of the federal one-year limitation period.

Nothing prevented petitioner from contacting any of the Institution's other inmate counsel for assistance and/or  to verify the accuracy of Billiot's advice.  Indeed, that is exactly what petitioner ultimately did in late February, 2009, when he contacted Orange, who had previously assisted petitioner with his criminal case.

Nor was petitioner prevented from preparing, transmitting and filing a federal petition on his own.  He was obviously familiar with the facts of his criminal case and the claims which he had raised in, and were rejected by, the Louisiana state courts.  In sum, Billiot's advice notwithstanding, the Institution provided petitioner with additional

19

avenues which he could have utilized to prepare and transmit pleadings to this court, as such, he was afforded a reasonable opportunity to present his claims to this court, that is all that is constitutionally required.

***Equitable Tolling***

Petitioner is also not entitled to equitable tolling.  The Fifth Circuit has held that the AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled.  *See Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998).  The Supreme Court, when assuming without deciding that equitable tolling is available, articulated that to be entitled to equitable tolling, the petitioner must show "that he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 127 S.Ct. at 1085; *See also Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807,161 L.Ed.2d 669 (2005).

The record does not support equitable tolling of the statute of limitations in the instant case.  The circumstances faced by petitioner were not so extraordinary as to provide a basis for equitable tolling.  Moreover, even if they were, the petitioner has not shown that he pursued his rights diligently, or that the alleged extraordinary circumstances prevented him from timely filing his federal *habeas* claims.

Petitioner suggests that Billiot's faulty advice warrants equitable tolling in this case.  However, the United States Supreme Court expressly rejected a similar claim of equitable tolling as follows:

> Lawrence argues that his counsel's mistake in miscalculating the limitations period entitles him to equitable tolling.  If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline.  Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel.

*Lawrence v. Florida*, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007).

The undersigned fails to see any significant difference between Lawrence's assertion of attorney error in calculating a filing deadline as the basis for equitable tolling and petitioner's assertion of inmate counsel Billiot's error.  In essence, Billiot, like Lawrence's counsel, erred in calculating the federal one year limitation period.  It follows, then, that petitioner's circumstance, like Lawrence's circumstance, is not sufficiently extraordinary to warrant equitable tolling.[8]

Furthermore, under the circumstances presented, the undersigned cannot find that petitioner diligently pursued federal *habeas* relief. Petitioner waited approximately eight months after completing direct review to file for state post-conviction relief.  More importantly, however, while being fully aware of the federal one-year limitation period, no competent evidence in the record suggests that petitioner took any action whatsoever for over one and one-half years to obtain the legal papers, which he claims were necessary for his timely filing of this petition.

More specifically, there is no competent evidence that petitioner sought these documents from an alternate source such as the state court, his trial or appellate counsel,

---

[8]The undersigned is aware of the Fifth Circuit's contradictory prior decision in *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002).  However, *Wynn* was rendered prior to the United States Supreme Court's decision in *Lawrence v. Florida*, 127 S.Ct. 1079, 1085 (2007). Therefore, the undersigned finds that *Lawrence* controls.

the District Attorney or his former inmate counsel Orange, who had previously assisted petitioner, and therefore obviously had knowledge of petitioner's criminal case.  To the contrary, petitioner sat idle from July, 2007 through late February, 2009.  Moreover, it is clear that with the exercise of ordinary diligence, petitioner could have learned that inmate counsel Orange had all of the papers necessary for the timely filing of this petition the entire time, and thus, petitioner could have, at any time, eradicated the adverse effects of the faulty advice given by Billiot.

Indeed, when petitioner finally took action in late February, 2009, and requested assistance from Orange, it took Orange only a few days, until March 4, 2009 (the date the certificate of service was signed), to prepare petitioner's federal petition for filing.  As the Fifth Circuit has noted, "equity is not intended for those who sleep on their rights." *Coleman,* 184 F.3d at 402 *citing Fisher v. Johnson,* 174 F.3d 710 (5th Cir.1999); *In re Wilson*, 442 F.3d at 875.

Finally, for the reasons set forth above with respect to the inapplicability of § 2244(d)(1)(B), the extraordinary circumstances alleged by petitioner (the loss of his legal file by prison officials and Billiot's faulty advice), did not prevent him from timely filing his federal *habeas* claims.

In accordance with the foregoing analysis, the undersigned finds that petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. § 2244(d). Accordingly;

22

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. § 2244(d).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Signed in Chambers, in Lafayette, Louisiana on May 25,  2010.

*C. Michael Hill*

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE